UNITED STATES of America ex rel. Golden McMATH, Petitioner-Appellant,

v.

Frank J. PATE, Warden, Respondent-Appellee.

No. 18059.

United States Court of Appeals, Seventh Circuit.

Nov. 16, 1970.

Kenneth Howell, Chicago, Ill., for petitioner-appellant.

Thomas J. Immel, Morton E. Friedman, Chicago, Ill., for respondent-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and KILEY, Circuit Judge.

KNOCH, Senior Circuit Judge.

This appeal has been taken from denial of a petition for writ of habeas corpus in which Relator, Golden McMath, alleged that his conviction was based on admission into evidence of involuntary confessions. The events with which we are concerned occurred in 1955 long prior to the more stringent standards established by Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but it is Relator's view that no confession under the alleged circumstances could have been voluntary.

The Relator was tried and convicted in a jury trial on a charge of rape, when he was sixteen years old. On belated appeal, the conviction was affirmed. People v. McMath, 1968, 40 Ill.2d 388, 240 N.E.2d 593.

In the meantime a prior petition for writ of habeas corpus had been dismissed for failure to exhaust state remedies.

The appeal before us grows out of a second such petition filed after the decision of the Supreme Court of Illinois on the direct appeal.

An evidentiary hearing was held in the District Court at the conclusion of which relief was denied. The District Judge in his supporting memorandum opinion made specific findings of fact adverse to the Relator. For example, he found that Relator was not threatened in any manner, physically abused or cursed; that no promises were made to induce his confessions; that he was not subjected to incessant questioning; that he was fed and allowed to rest.

From the evidence, including that of Relator, it appears that after his arrest, about midnight, at his home, he was taken to the homes of two other boys implicated by the same accomplice who gave the police the Relator's name. He was taken to the local police station and later to the Englewood Police Station in whose territory the offense had been committed. He said he spent several hours during the night at the Audy Home, where he said that he was too frightened to sleep for more than half an hour.

The District Judge was faced with numerous issues of credibility arising from conflicts not only between the testimony of the Relator and that of the various police officers at the evidentiary hearing on the second petition for writ of habeas corpus, but between the several statements of the Relator himself.

At the trial, in addition to identification by the victim, evidence was introduced concerning three oral confessions: one in front of Relator's home at the time of his arrest, one in the squad car when Relator confronted the accomplice who had already admitted participating with Relator and others in a rape-robbery, and a third when interrogated by the State's Attorney in the presence of the victim, early the next morning.

At the trial and in the first federal habeas corpus petition, Relator denied making any confession at all. In his direct appeal and in the second habeas corpus petition, Relator agreed that a confession had been made to the State's Attorney, but denied its legality. In this second habeas corpus petition, he now charges that the third statement, which he considers the most damaging as it was made in the presence of other than police witnesses, was the product of police abuse.

At his trial, Relator admitted robbery and testified that his companions had raped the victim, but that although he himself had attempted to do so as well, he had not achieved consummation. The sole issue for the trial jury was whether Relator had committed rape.

Relator's present counsel attributes to the state of Illinois law at that time,

trial counsel's failure to object at the trial to admission of the three oral confessions of rape or to move for their suppression. There was no provision at that time for a defendant who denied making a confession to challenge its voluntariness. Thus counsel would be presented with a difficult decision in trial tactics. However, the trial counsel who represented Relator was a witness at the evidentiary hearing in the District Court. He testified that Relator in conversations with him denied making any confession and never complained to counsel of any mistreatment or involuntary statements made while he was in custody.

If Relator's confessions had in fact been wrung from a child, alone, physically and psychologically abused over lengthy periods of time as in the cases cited by Relator, such as Haley v. Ohio, 1948, 332 U.S. 596, 68 S.Ct. 302, 92 L. Ed. 224 and Gallegos v. Colorado, 1962, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325, there would indeed be grounds for concluding that his conviction might have been obtained at least in part through violation of his constitutional rights. But on the facts found by the District Judge, these cases are clearly distinguished.

There were numerous small contradictions in Relator's accounts of the events of that night. For example, he now asserts that he was routed from bed by the police. At his trial, he said he came downstairs on hearing a knock at the door and opened it to admit the police officers there. His Mother testified that she opened the door. The police officers also said one of Relator's parents admitted them. At the District Court hearing, Relator agreed that his Mother opened the door as he said he went back upstairs because he was frightened and not dressed. Relator's Mother also testified at the trial that on her advice, Relator had surrendered his gun to the police, although in the District Court, she denied that he had a gun in the house. At any rate, Relator was not alone and unadvised at the time of his arrest. According to Relator one of the arresting officers also advised his Mother to engage counsel for Relator, although he says that this was done in an abusive manner. It appears that there was a basis for the People's argument on direct appeal that Relator's first confession outside the house may easily have been the product of his Mother's advice to co-operate.

The District Judge found specifically that Relator did not ask to see any attorney during the interrogation and made only a general reference to his family.

Small inconsistencies appear throughout Relator's testimony at the District Court hearing. For example, he said repeatedly that in a few minutes of the arrival of the police he was taken from his room handcuffed to his younger brother and that he remained so handcuffed until they reached the Audy Home, that much later he was confined in a room and handcuffed to a chair. But he speaks of putting on a jacket which was brought to him there, and then later says he put on his jacket outside his home, evidently while handcuffed to his brother. He also said he was left sitting without a shirt by an open window in one station through which rain reached him. He then corrected himself to say that the police removed the handcuffs long enough to allow him to dress, possibly outside his home or in the police car. The police witnesses had said he dressed at home.

In addition to the evidence of the various police officers, and other witnesses named above, the District Judge also heard testimony from Relator's brother and a representative of the victim's employer who had been present for part of the interrogation.

There is, of course, sharply contradicting testimony by the regular police officers involved and the Juvenile officer who was present through the night from the time the arresting officers brought Relator out of his home, and in whose custody the juvenile defendants were, until the following morning when

the State's Attorney took the third statement. This testimony indicates that Relator was not in any way abused, was fed and allowed to rest, and that much of the interrogation time was taken up in filling out routine reports. The District Judge saw and heard these witnesses. It is axiomatic that we will not re-weigh the evidence and determine the credibility of the witnesses. United States v. Miles, 7 Cir., 1968, 401 F.2d 65, 67.

As we are satisfied that there is no basis for reversing the District Court's ruling on the voluntariness of the three confessions, we need not discuss Relator's argument that he could not have been found guilty as an aider and abettor (although he was so charged in the indictment) on the basis of his admissions in court at his trial.

This Court is grateful for the dedicated services of Mr. Kenneth K. Howell of the Illinois bar who, as Court-appointed counsel, represented Relator with skill and diligence.

The decision of the District Court is affirmed.

Affirmed.